UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TIMOTHY ARNOLD, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:19-cv-340 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| SPEEDWAY, LLC, | : | |
| | : | |
| Defendant. | : | |

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 30)**

This case involves Timothy Arnold's ("Arnold") suit alleging claims against his former employer Speedway, LLC ("Speedway") under the Family and Medical Leave Act ("FMLA"), the Americans with Disability Act ("ADA"), Ohio's unlawful discrimination law, and a conversion claim. Pending before the Court is Speedway's Motion for Summary Judgment (the "Motion"). (Doc. No. 30.) Speedway argues that Arnold abandoned his employment with Speedway, failed to exhaust his administrative remedies under the ADA, was not disabled under the ADA, and failed to communicate with Speedway regarding (the allegedly converted) property he left inside his Speedway-issued vehicle. (*Id*.) In response, Arnold argues that he has made a *prima facie* case of retaliation under the FMLA and Ohio law, as well as for disability discrimination under Ohio law. (Doc. No. 33.) Speedway argues in Reply that Arnold failed to meet his *prima facie* burden and that he abandoned three of his claims. (Doc. No. 35.)

The Court **GRANTS** Defendant's Motion for Summary Judgment and dismisses the matter.

I.     BACKGROUND [1]

Arnold was hired by Speedway in October 2014 to work in Speedway's Alarm Center. (Doc. No. 30 at PageID 148; Doc. No. 33 at PageID 360.)  In August 2017, Arnold joined the maintenance department as a technician.  (Doc. No. 30 at PageID 148; Doc. No. 33 at PageID 360.)  In his new role, Arnold traveled between his assigned stores and was responsible for maintaining the equipment and structures at those stores.  (Doc. No. 30 at PageID 148; Doc. No. 33 at PageID 360.)  Arnold was scheduled to work Monday through Friday from 8:00 A.M. to 5:00 P.M.  (Doc. No. 30 at PageID 148.)

In 2017, Arnold began experiencing severe nausea, vomiting, and pain, among other symptoms.  (Doc. No. 33 at PageID 361.)  In early 2018, Arnold was diagnosed with gallstones and it was determined that he would need surgery.  (*Id*.)  On June 20, 2018, he submitted a request for FMLA leave, which was approved by his supervisor, Bryce Summers ("Summers").  (Doc. No. 30 at PageID 150; Doc. No. 33 at PageID 361-62.)  Arnold received an extension on his leave and was cleared to return to work on September 11, 2018.  (Doc. No. 30 at PageID 150.)

Speedway processed Arnold's return to work form on September 13, 2021.  (Doc. No. 30-1 at PageID 268; Doc. No. 33-2 at PageID 388.)  Arnold was granted a floating holiday for September 11 and vacation days for September 12, 13, and 14.  (Doc. No. 30 at PageID 151; Doc No. 33 at PageID 362-63.)  His first day back at work was scheduled to be September 17, 2018. (Doc. No. 30 at PageID 151; Doc. No. 33 at PageID 363.)

On September 17, at 8:01 A.M., Arnold texted his supervisor, Summers, and stated that his

---

[1] For purposes of resolving the Motion, the recitation in the "Background" section includes undisputed facts and otherwise assumes the evidence of the non-moving party as true and draws all reasonable inferences in the nonmoving party's favor, as is appropriate at this stage.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014).

pay had not been fixed[2] and to "consider me on vacation until they pay me. . . ." (Doc. No. 30-2 at PageID 286.) Summers did not approve the vacation request and reassigned Arnold's stores to him. (*Id*.) Arnold then stated that he had storm damage to his home that he needed money to fix. (*Id*. at PageID 287.) Arnold further stated, "[a]m I being discriminated against for my pay and time to take care of an emergency due to my health? Sounds like it to me." (*Id*.) Arnold did not show-up for work on September 17 or the following day, September 18. (Doc. No. 30 at PageID 151.)

On September 18, 2018, Speedway sent two corporate security officers to Arnold's property to retrieve a Speedway-issued vehicle. (Doc. No. 30 at PageID 152; Doc. No. 33 at PageID 364.) Speedway contacted the Miami County Sheriff's department to assist with its retrieval of the vehicle. (Doc. No. 30 at PageID 152; Doc. No. 33 at PageID 364.) Ultimately, Speedway terminated Arnold on September 19, 2018, with an effective date of September 17. (Doc. No. 30 at PageID 152; Doc. No. 33 at PageID 365.)

On October 22, 2019, Arnold filed his Complaint alleging unlawful interference with FMLA rights; retaliation in violation of the FMLA; disability discrimination in violation of Ohio Rev. Code § 4112; disability discrimination in violation of the ADA; retaliation; and, conversion of chattels. (Doc. No. 1.) After the completion of discovery, Speedway filed the present Motion on June 14, 2021. (Doc. No. 30.) Arnold filed his opposition on July 29, 2021. (Doc. No. 33.) Speedway filed its reply on August 19, 2021. (Doc. No. 35.) The Motion is fully briefed and ripe for review.

---

[2] Arnold's text message refers to an issue with his pay from Speedway. However, Arnold has not alleged any claims regarding his pay and the Court will not consider any arguments related to Speedway's potential failure to pay Arnold in this Order.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id.* at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule

56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is "whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

### III.  ANALYSIS

Arnold alleges six counts in his Complaint: unlawful interference with FMLA rights; retaliation in violation of the FMLA; disability discrimination in violation of Ohio Rev. Code § 4112; disability discrimination in violation of the ADA; retaliation; and, conversion of chattels. (Doc. No. 1.) Speedway seeks summary judgment on all six of Arnold's claims. (Doc. No. 30.)

#### A.  **FMLA Interference Claim (Count 1)**

Speedway argues that Arnold's FMLA interference claim fails because he was granted

FMLA leave and took leave from June 20, 2018 to August 16, 2018. (Doc. No. 30 at PageID 153.) Moreover, Speedway argues that its employees promptly provided Arnold with the paperwork he needed to request FMLA leave. (*Id*. at PageID 154.) Finally, Speedway argues that the statements of Arnold's co-workers are insufficient to constitute FMLA interference because those co-workers did not have the authority to grant or deny FMLA leave. (*Id*.) Arnold offers no argument in opposition to Speedway's Motion on the interference claim. Therefore, the Court dismisses Count 1, Unlawful Interference with FMLA Rights.

### B. Retaliation Claims (Counts 2 and 5)

Arnold alleges two claims predicated on a theory of retaliation by Speedway for his use of FMLA leave. Specifically, Arnold alleges an FMLA retaliation claim and a retaliation claim under Ohio law. (Doc. No. 1 at PageID 12, 14-15.)

#### I. FMLA Retaliation Claim

Under the FMLA, an employee is entitled to up to twelve weeks of unpaid leave to care for their own "serious health condition." 29 U.S.C. § 2612(a)(1)(D). An employee is required to provide notice of leave, generally thirty days prior to taking leave, but, if that is not possible, then "such notice as is practicable." 29 U.S.C. § 2612(e)(2). An employee who takes FMLA leave is entitled "(A) to be restored . . . to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). An employer may require certification from a health care professional that an employee is unable to work because of a serious health condition of the employee. 29 U.S.C. § 2614(c)(3). An employer may also require certification that the employee may return to work, if the employer has a "uniformly applied practice or policy." 29 U.S.C. § 2614(a)(4).

6

A plaintiff may seek to show a violation of their FMLA rights under two legal theories: interference or retaliation. *Revennaugh v. United States Postal Serv.*, No. 2:16-cv-783, 2019 U.S. Dist. LEXIS 164313, at *36 (S.D. Ohio Sept. 25, 2019). To state a claim for retaliation under the FMLA, a plaintiff must show: (1) that they availed themselves of a protected right under the FMLA (2) that their employer knew of their intent to take leave; (3) that they were adversely affected by an employment decision; and, (4) a causal connection between the exercise of the right under the FMLA and the adverse employment decision. *Wilson v. Dynasplint Sys.*, No. 3:14-cv-310, 2017 U.S. Dist. LEXIS 50342, at *12-13 (S.D. Ohio Apr. 3, 2017).

When a plaintiff presents only circumstantial evidence of retaliation, as is the case here, the claims are analyzed under the *McDonnell Douglas* framework used to assess discrimination claims. *Ebright v. City of Pickerington*, No. 2:16-CV-378, 2018 U.S. Dist. LEXIS 50766, at *13, 2018 WL 1512280 (S.D. Ohio Mar. 27, 2018); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of making out a *prima facie* case of retaliation. *McDonnell Douglas*, 411 U.S. at 802; *Ebright*, 2018 U.S. Dist. LEXIS 50766, at *13; *Revennaugh*, 2019 U.S. Dist. LEXIS 164313, at *48. Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a "legitimate nondiscriminatory reason" for its actions. *Ebright*, 2018 U.S. Dist. LEXIS 50766, at *13; *Revennaugh*, 2019 U.S. Dist. LEXIS 164313, at *48. The plaintiff must then show that the reason provided by the employer was not the true reason for its actions. *Ebright*, 2018 U.S. Dist. LEXIS 50766, at *13; *Revennaugh*, 2019 U.S. Dist. LEXIS 164313, at *48.

The Parties agree that Arnold was entitled to and took FMLA leave. Moreover, the Parties agree that Speedway was aware that Arnold had requested FMLA leave and it granted that leave. There is also no dispute that Arnold was terminated in the time after he was cleared to return from

7

FMLA leave. [3]  Therefore, the main dispute between the Parties is whether there was a causal connection between the termination and the exercised FMLA right.

Arnold argues that the temporal proximity between the conclusion of his FMLA leave and his termination by Speedway is sufficient to establish a causal connection.  (Doc. No. 33 at PageID 370.)  He further argues that other employees had missed work on various occasions without being terminated, but he was terminated after missing a single day of work.[4]  (*Id*. at PageID 372.)  Moreover, Arnold states that he was told by two co-workers--prior to taking FMLA leave--that he would be terminated for taking medical leave.  (*Id*. at PageID 361.)  Arnold also argues that Speedway's stated reason for his termination has changed over time and, therefore, it is pre-textual.  (*Id*. at PageID 373.)

Arnold argues that the temporal proximity between the end of his protected FMLA leave and his termination is sufficient to establish a *prima facie* case of retaliation.  (*Id*. at PageID 371.)  Arnold asserts that the one-week interval between the end of his leave and his termination is sufficient to establish a "causal connection."  (*Id*.)  The Sixth Circuit has held that temporal proximity alone is sufficient to establish a *prima facie* case of discrimination.  *Krumheuer v. GAB*

---

[3] Speedway argues that Arnold was not subject to an adverse employment decision because he did not intend to return from FMLA leave and effectively abandoned his job. (Doc. No. 30 at PageID 155.) Arnold argues that Speedway filed a false theft report when its employees retrieved a company-issued vehicle from his property and that this too constitutes an adverse employment action. (Doc. No. 33 at PageID 368.) However, Arnold does not cite any evidence tying the theft report to his FMLA leave; instead, his opposition focuses on the termination itself. Therefore, the Court will proceed solely based on the termination and will presume, without deciding, that Speedway's decision to terminate Arnold was an adverse employment decision.

[4] Arnold's opposition states that other employees were given emergency vacation days and cites to his deposition and the deposition of Summers. (Doc. No. 33 at PageID 363-364.) However, Arnold failed to attach the relevant deposition pages to his opposition. Nor did Speedway cite a majority of those pages as part of its Motion. Moreover, Arnold did not attach any deposition pages for any of his factual citations. Failing to attach any documentation in support of his factual cites ignores Fed. R. Civ. P. 56(c). This is unacceptable. As such, the Court will not consider any deposition testimony cited by Arnold that is not supported by a document attached to either Parties' brief. *EEOC v. JP Morgan Chase Bank, N.A.*, No. 2:09-cv-864, 2013 U.S. Dist. LEXIS 35369, at *3-4, 2013 WL 1787601 (S.D. Ohio Mar. 14, 2013) (unauthenticated deposition transcripts were not considered by the court); *Podlesnick v. Airborne Express*, Inc., 550 F. Supp. 906, 910 (S.D. Ohio 1982) (depositions not filed with the court but referred to in the summary judgment memoranda were not considered in court's decision).

*Robins N. Am., Inc.*, 484 Fed. App'x 1, 5 (6th Cir. 2012); *Bush v. Compass Grp. USA, Inc.*, 683 Fed. App'x 440, 451 (6th Cir. 2017). However, Arnold is incorrect when he states that the relevant time period, in this case, is one week. The Sixth Circuit explained that the relevant time period begins "after the employer learns of a protected activity" and not after the FMLA leave expires. *Bush*, 683 Fed. App'x at 452. Therefore, the relevant timeframe here would have begun on June 20, 2018, when Arnold submitted his request for FMLA leave, and concluded on September 17, 2018, the date to which Arnold's termination was backdated to. The Sixth Circuit has held that a four-month interval is insufficient, on its own, to satisfy temporal proximity in order to establish a *prima facie* case. *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986); *Allen v. Ohio Dep't of Job & Family Servs.*, No. 2:08-cv-158, 697 F. Supp. 2d 854, 897 (S.D. Ohio Mar. 12, 2010); *Covert v. Monroe Cnty. Dep't of Job & Family Servs.*, No. 2:08-cv-744, 2010 U.S. Dist. LEXIS 55882, at *36, 2010 WL 2346550 (S.D. Ohio June 8, 2010).

Moreover, Arnold's retaliation claim is unsupported by additional facts to meet his burden or to demonstrate that Speedway's non-discriminatory reason for firing him was pretextual. Arnold points to his co-workers as sources who informed him that he would be terminated if he took FMLA leave. However, a co-worker's statements threatening retaliation are insufficient to establish a case of FMLA retaliation where that co-worker has no authority over the plaintiff or the approval of FMLA leave. *Weissberg v. Chalfant Mfg. Co.*, 2016 U.S. Dist. LEXIS 16994, at *15, 2016 WL 541466 (N.D. Ohio Feb. 11, 2016).

Furthermore, Arnold's argument that Speedway's reason for firing him has shifted over time is flawed. Arnold's termination notice states: "Timothy didn't show up for work on Monday 9-17-18." (Doc. No. 33-6.) Arnold now argues that Speedway's inconsistent reasons for termination appear in its Motion. Specifically, the Motion states that Arnold "failed to report to

9

work on September 17-18, secure approved absence, or communicate with Speedway." (Doc. No. 30 at PageID 157.) The variation in these two rationales are distinctions without difference. If an employee is terminated for not showing up to work, it is not a shift in reasoning to say that the employee neglected to secure an approved absence or failed to communicate with their employer. Such failures would be part and parcel of a failure to report to work.

Finally, Arnold points to two employees who were given emergency-based vacation days when they had issues at home or had been drinking the night before. (Doc. No. 33 at PageID 372; Doc. No. 30-1 at PageID 177.) However, these employees were given emergency vacation days. There is no indication that, like Arnold, these employees were denied vacation days and then failed to show-up for work. Nor is there any evidence that these employees were similarly situated to Arnold. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)) (the plaintiff is "'required to prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation.'") The evidence submitted regarding these two discrete employees is insufficient to raise a material issue of fact.

Therefore, the Court dismisses Count 2, Retaliation in Violation of FMLA.

## II.  Retaliation under Ohio Rev. Code § 4112

Under Ohio Rev. Code § 4112, a *prima facie* case of retaliation requires a plaintiff to demonstrate: (1) the plaintiff engaged in activity protected by § 4112; (2) the defendant knew of the plaintiff's exercise of their protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and, (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Sherrer v. Hamilton Cnty. Bd. of Health*, 747 F. Supp. 2d 924, 934 (S.D. Ohio 2010); *Arnold v. City of Columbus*, No. 2:08-cv-31, 2011 U.S. Dist. LEXIS 35807,

at *73-74, 2011 WL 1303593 (S.D. Ohio Mar. 31, 2011). Caselaw interpreting the ADA and Title VII are generally applicable to cases involving violations of Ohio Rev. Code § 4112. *Giles v. Univ. of Toledo*, 286 Fed. App'x 295, 306 (6th Cir. 2008); *Arnold*, 2011 U.S. Dist. LEXIS 35807, at *18-19.

Arnold's retaliation claim fails for the same reasons as his FMLA retaliation claim. Arnold has failed to present any material evidence demonstrating that his termination had a causal connection to his FMLA leave. Therefore, the Court dismisses Count 5, Retaliation.

### C. Disability Discrimination in Violation of R.C. § 4112 and the ADA (Counts 3 and 4)

Arnold alleges two claims predicated on the theory that Speedway discriminated against him because he was disabled. Specifically, Arnold alleges a disability discrimination claim under Ohio law and a disability discrimination claim under the ADA. (Doc. No. 1 at PageID 12-14.)

#### I. Ohio Disability Discrimination Claim

Under Ohio Rev. Code § 4112.02, an employer is prohibited from discriminating against a person based on a disability. To establish a *prima facie* case of discrimination based on a disability, the plaintiff must show: (1) they were disabled, (2) the employer took an adverse employment action, at least in part, because the individual was disabled, and (3) the person, though disabled, can safely and substantially perform the essential functions of the job in question. *Hood v. Diamond Prods.*, 74 Ohio St. 3d 298, 658 N.E.2d 738, 741 (1996); *Lucas v. UPS, Inc.*, No. 3:17-cv-275, 2020 U.S. Dist. LEXIS 15910, at *13, 2020 WL 491192 (S.D. Ohio Jan. 30, 2020).[5]

A disability is defined as, "[a] physical or mental impairment that substantially limits one

---

[5] The ADA is similar to the Ohio disability discrimination law and, as a result, the Court can look to the regulations and cases interpreting the ADA for guidance in its interpretation of Ohio law. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 450 (6th Cir. 2007) (citing *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 1998 Ohio 410, 697 N.E.2d 204, 206-07 (1998)).

11

or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g)(1). An impairment is a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Generally, short term restrictions are not substantially limiting. *Green v. Rosemont Indus.*, 5 F. Supp. 2d 568, 572 (S.D. Ohio 1998); *Nelson v. Clermont Cnty. Veterans Serv. Comm'n*, No. 1:11-cvB335-HJW, 2013 U.S. Dist. LEXIS 156935, at *25 (S.D. Ohio Nov. 1, 2013).

Speedway argues that Arnold's gallstones were a temporary condition that did not render him disabled. (Doc. No. 30 at PageID 160-161.) Speedway further argues that Arnold abandoned his employment and cannot show that Speedway's stated reason for his dismissal is pretextual. (*Id*. at PageID 161-162.) Finally, Speedway argues that Arnold cannot show any similarly situated non-disabled employees were treated more favorably. (*Id*. at PageID 162.) In this case, the Court need only address whether Arnold was disabled.

The undisputed evidence shows that Arnold was on FMLA leave from June 20, 2018 to September 11, 2018. (Doc. No. 30 at PageID 150; Doc. No. 33 at PageID 362.) Moreover, the evidence demonstrates that Arnold was medically cleared to return to work on September 11, 2018 "without restrictions." (Doc. No. 33-12 at PageID 456.) There is no evidence that Arnold was suffering any adverse medical consequences from gallstones or the required surgery that would have limited his ability to perform major life activities when he was cleared to return to work on September 11, 2018. Thus, when Arnold was terminated, he was not disabled.

Therefore, the Court dismisses Count 3, Disability Discrimination in Violation of R.C. § 4112.02, *et seq*.

## II. <u>ADA Disability Discrimination Claim</u>

Speedway argues that Arnold's claim of disability discrimination under the ADA must also fail. (Doc. No. 30 at PageID 159.) Specifically, Speedway argues that Arnold failed to timely file

a charge of employment discrimination with Equal Employment Opportunity Commission ("EEOC") and, therefore, he failed to exhaust the administrative remedies available to him under the ADA. (*Id*. at PageID 160.) Specifically, Speedway argues that Arnold filed his charge of discrimination 301 days after the alleged discrimination, and it was therefore untimely. (*Id*. at PageID 160; Doc. No. 30-1 at PageID 228.) Arnold offers no argument in opposition to Speedway's Motion on the ADA claim. Therefore, the Court dismisses Count 4, Disability Discrimination in Violation of the ADA.[6]

### D. Conversion (Count 6)

Finally, Speedway argues that Arnold has failed to establish a claim of conversion. (Doc. No. 30 at PageID 165.) Speedway argues that it legally obtained possession of the truck it had issued to Arnold. (*Id*.) Speedway further argues that it made several attempts to contact Arnold in order to return the personal items he had left inside the truck. (*Id*. at PageID 166.) Arnold never responded to Speedway and never attempted to collect the personal property he left in the truck. (*Id*.) Speedway argues, therefore, that he cannot establish a claim for conversion. (*Id*.) Arnold offers no argument in opposition to Speedway's Motion on the conversion claim. Therefore, the Court dismisses Count 6, Conversion of Chattel.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 30). This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, November 23, 2021.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[6] Even if Arnold had replied, the ADA and Ohio Rev. Code § 4112 are interpreted using the same regulations and case law. Therefore, the outcome would have been the same regardless.